# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PROSPECT CCMC, LLC d/b/a/ CROZER-CHESTER MEDICAL CENTER,** Plaintiff, | : : : : : | |
| v. | : : | MISCELLANEOUS NO. 18-174 |
| **CCNA/PENNSYLVANIA ASSOCIATION OF STAFF NURSES AND ALLIED PROFESSIONALS,** Defendant. | : : : : : | |
| **CCNA/PENNSYLVANIA ASSOCIATION OF STAFF NURSES AND ALLIED PROFESSIONALS,** Plaintiff, | : : : : : | |
| v. | : : | CIVIL ACTION NO. 18-4039 |
| **PROSPECT CCMC, LLC d/b/a/ CROZER-CHESTER MEDICAL CENTER,** Defendant. | : : : : : | |

## MEMORANDUM

**MCHUGH, J.**                                                                                                                          **JANUARY 28, 2019**

This action follows an arbitration award ("Award") resolving a labor dispute. The prevailing party seeking to enforce the Award is the Pennsylvania Association of Staff Nurses and Allied Professionals ("PASNAP") a labor organization representing nurses employed by Crozer-Chester Medical Center ("CCMC"). The losing party seeking to vacate the Award (Civil Action No. 18-174) is the owner of CCMC's hospital system, Prospect Medical Holdings ("Prospect"). PASNAP has filed a separate suit to enforce the Award (Civil Action No. 18-

1

4039). The separately filed suits concern the vacation or confirmation of the same arbitration award and therefore were consolidated by order of this Court under Civil Action No. 18-174. The opinion below addresses both.

The case presents two main issues: first, whether Prospect's motion for vacatur under Section 10(a) of the Federal Arbitration Act ("FAA") is timely and, second, whether the arbitrator, Kathleen Miller, acted within the proper scope of her authority in conducting the proceeding and construing the collective bargaining agreement ("CBA"). I conclude that Prospect's motion was timely because it was proper for the employer to proceed under the FAA, but further conclude on the merits that the Award represents a proper exercise of the Arbitrator's authority and does not warrant vacatur. Consequently, I deny Prospect's Motion for Vacatur in this action and grant PASNAP's Motion for Judgment on the Pleadings in the related case.

## I.  FACTUAL RECORD

CCMC is one of five hospitals comprising the Crozer-Keystone Health System ("CKHS"). Nurses at CCMC have been party to a CBA with the hospital for almost 40 years, and their union has been affiliated with PASNAP since 2000. The current CBA was negotiated during 2014 and 2015, with the contract period running from June 9, 2014 through June 8, 2019.

In 2014, a change was made to the CBA, capping employees' accrual of vacation at 200% of their annual vacation entitlement. Prior to the 2014-2019 CBA, employees had no cap on the amount of vacation they could carry over from year to year and thus maintained a "bank" of vacation time. In 2014, the parties agreed to address vacation accrual by adding the following provision to Article 9, VACATION, Section 1.c of the CBA:

> Effective July 1, 2015, no employees may accumulate more than two times (i.e. 200%) of their annual entitlement.

Pl.'s Ex. 2, 25, ECF No. 10.

2

In 2016, Prospect purchased the assets of CKHS, signing a Recognition Agreement on June 17, 2016 that assumed the existing CBA.[1] Prospect took over operations of CKHS on July 1, 2016. Soon thereafter, it purported to reclaim all the vacation hours employees had rolled over throughout the years before the cap took effect in excess of 200% of the annual vacation entitlement. On July 28, 2016, PASNAP filed a grievance over the application of the 200% cap to employees' existing vacation bank and the parties ultimately stipulated to the following issue for arbitration:

> Did Prospect, as successor to Crozer-Keystone, violate its obligations under the collective bargaining agreement to maintain vacation banks for employees who on the date of acquisition had greater than the contractual maximum accrual.

Pl.'s Ex. 1, 2, ECF No. 10.

In the arbitration that followed, Prospect sought to introduce testimony about the outcome of an unfair labor practice charge filed with the National Labor Relations Board ("NLRB") by employees at another hospital and in a different bargaining unit with PASNAP. In support of its charge with the NLRB, PASNAP had argued that Prospect improperly reduced excess vacation balances at the time it assumed operations, a position which the NLRB found had no merit, leading PASNAP to withdraw the charge. The record reflects that Miller heard argument from both parties and then refused to allow the testimony because she was not convinced of its relevancy.

In her Award sustaining the grievance, Miller outlined Prospect's legal arguments in opposition to the grievance, explaining in pertinent part that "[e]mployer relies on the long-standing successorship framework set forth by the NLRB and the Supreme Court on this subject." *Id.* at 15. Miller then summarized the legal authority underpinning Prospect's position:

---

[1] There was one exception noted with regard to healthcare coverage, but it had no effect on vacation time and no bearing on the present dispute.

3

> In *Burns*, the Supreme Court held: that a successor employer purchasing the assets of another business does not have an obligation to bargain with an incumbent union from the outset but, rather, has the right to set initial terms and conditions of employment (406 U.S. at 293-94); and that a narrow exception to this occurs where it is "perfectly clear" that a successor will, as a matter of course, retain all employees without change to their working conditions. 406 U.S. at 294.
>
> In *Spruce Up Corp.*, the NLRB held that the "perfectly clear" exception applies only where the successor employer has failed to announce its intention to change terms and conditions of employment or where it has actively misled employees into believing that they would be retained without any changes to their working conditions. 209 NLRB 194, 195 (1974). NLRB case law makes clear: that notice to employees in writing suffices to put them on notice of the existence of altered terms and conditions of employment before a successor purchaser of assets assumes operations [*Specialty Envelope Co.*, 321 NLRB 828, 831-32 (1996)]; and that communications to a union qualifies equally as notice directly to employees. *Elf Atochem N. Am. Inc.*, 339 NLRB 796 (2003).

*Id.* at 15-16. Miller likewise summarized PASNAP's legal arguments on the successorship question, noting that:

> The Union stresses that in the Recognition Agreement Prospect agreed to with PASNAP, Prospect agreed to accept all terms and conditions in the predecessor CBA with a single exception regarding health insurance. The *Burns* case reflects the general principle that although when a unionized facility changes hands a successor employer who hired a majority of the workforce must bargain with the union upon request, it has the option of accepting the existing CBA or imposing initial terms and conditions from which the parties then bargain. *NLRB v. Burns International Security Services, Inc.*, 406 U.S. 272. In the present case, Prospect did not impose initial terms and conditions at any time, either initially or as a proposal for the successor agreement.

*Id.* at 13.

Because Prospect had adopted the CBA, it was bound by its terms unless the union had notice of the change, either from Prospect or its predecessor. Miller thus focused on notice as a dispositive issue. The Award set forth several findings as the basis for its determination that the requisite notice was never provided. First, Miller reviewed the bargaining history of the 2014-2019 CBA, finding that, although CKHS may have taken the bargaining position that employees would lose their excess bank, there was no evidence of mutual agreement. Miller then analyzed

4

the text of Article 9, Section 1.c itself and determined that it had not placed a limit on the employees' previously accumulated excess vacation bank, and therefore that the "bargaining unit employees retained [an] unfettered right to their excess bank under the CBA which became effective in 2014." *Id.* at 22.

Finding that the 2014-2019 CBA did not address the vacation bank, Miller then turned to whether PASNAP was notified by CKHS of any limit to employees' vacation bank after the CBA was adopted in 2015. Of relevant importance, Miller concluded that an exchange between PASNAP representative Andrew Gaffney and a CKHS representative Charles Reilly did not constitute notice. In the exchange, Reilly informed Gaffney that employees were going to lose their vacation, Gaffney disagreed, and Reilly responded that he believed they were but then "tabled" the subject. *Id.* at 25. Miller found that this assertion of opposing positions, without more, fell short of the notice required. Testimony from Gaffney that he understood employees would lose accrued vacation time was also deemed inconclusive because the period of time he was referring to was unclear. Similarly, Miller found no evidence that Prospect itself had given the notice required. Letters sent to employees with language addressing accrued time off were insufficient as notice, both because the language was not clear about a loss of banked vacation and because there was no evidence the letters were sent or received prior to the finalization of the Recognition Agreement.

Finding no other evidence of the notice required of a successor asset purchaser to set initial terms and conditions, Miller sustained the grievance in favor of PASNAP and issued the Award on June 14, 2018 directing Prospect to restore the banked vacation time. The Arbitrator set forth her analysis in a 30-page single-spaced document. This litigation followed.

## II. DISCUSSION

### A. Statute of Limitations

A threshold issue is the timeliness of Prospect's challenge, which depends upon whether the FAA, 9 U.S.C. § 12, or the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, governs this case. Prospect filed within the 90 days provided by the FAA, but beyond the 30 days incorporated into the LMRA by operation of Pennsylvania law.

The central question is whether the FAA exempts the CBA at issue here, thus requiring Prospect to have filed for vacatur under the LMRA. Section 1 of the FAA states, "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. Courts have struggled with the application of this clause to labor arbitration, particularly with whether "contracts of employment" includes collective bargaining agreements and, if so, whether it only extends to those of transportation workers.

Ultimately, the Third Circuit has concluded that the exemption clause applies to collective bargaining agreements but only those covering employees "acting directly in the channels of commerce itself" such as railroad workers and bus line employees. *Tenney Eng'r, Inc. v. United Elec. Radio & Mach. Workers of Am., Local 437*, 207 F.2d 450, 453 (3d Cir. 1953) (en banc). The Court of Appeals continues to adhere to this view, notwithstanding intervening decisions which appeared to question the vitality of the FAA's application to labor arbitration agreements. *See Serv. Emps. Int'l Union, Local No. 36, AFL-CIO v. Office Ctr. Servs., Inc.*, 670 F.2d 404, 407 n.6 (3d Cir. 1982) (questioning the FAA's continued application to labor agreements but making clear that *Tenney* has not been overruled).

6

More recently, in *Circuit City Stores v. Adams*, the Supreme Court examined whether Section 1 of the FAA applied to an agreement to arbitrate in an individual employment contract. 532 U.S. 105 (2001). While its decision did not speak directly to collective bargaining agreements, the Court amplified *Tenney*'s holding,[2] finding that the language of "Section 1 exempts from the FAA only contracts of employment of transportation workers."[3] *Id.* at 119.

In light of *Tenney*, the answer here is clear. As there is no dispute that the CBA is between a hospital owner and nurse employees, who cannot possibly be construed as transportation workers, the CBA is not exempt from judicial review pursuant to the FAA. Consequently, Prospect's motion for vacatur was properly and timely filed under the FAA, allowing me to consider the merits of its challenge.

## B. Vacatur Standard of Review

Section 10 of the FAA allows a federal court to vacate an arbitration award on four specific grounds. Prospect's motion rests on subsections (a)(4) and (a)(3), which provide for vacatur:

> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

---

[2] Indeed, in a dissenting opinion, Justice Stevens noted that the view adopted by the majority in *Circuit City Stores* was first developed by the Third Circuit in *Tenney*. *Id.* at 130.

[3] PASNAP relies on a later Fifth Circuit case, *Brown v. Witco Corp.*, which implicitly suggests that *Circuit City Stores*' holding was limited to individual employment contracts, leaving open the question of whether the interpretation of Section 1 extends to collective bargaining agreements. *See* 340 F.3d 209, 217-18 (5th Cir. 2003) (refusing to apply the FAA in the review of an arbitration award because it arose from the terms of a collective bargaining agreement). Such latitude may exist in the Fifth Circuit, but I am bound by the Third Circuit's decision in *Tenney*, which made clear that the FAA excludes only collective bargaining agreements of transportation workers.

7

9 U.S.C. § 10(a).

Federal courts are instructed to afford strong deference to an arbitrator's findings of fact and interpretation of the agreement because the parties chose to have disputes settled by an arbitrator rather than a judge. *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 37-38 (1987). "Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." *Id.* at 38. A court may not review the merits of an arbitration award even if a party alleges the award rests on erroneous findings of fact or interpretations of the agreement. *Id.* at 36. Thus, a court may only vacate an award in extraordinary circumstances, such as when the award cannot arguably be based in a collective bargaining agreement or represents an arbitrator's "own brand of industrial justice." *Id.* (quoting *United Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)).

Despite this judicial deference, Prospect argues that vacatur is proper for three reasons: (1) Miller manifestly disregarded controlling federal labor law, which compelled a different outcome; (2) Miller's decision had a basis outside the bounds of the CBA; and (3) Miller refused to hear evidence on a controlling NLRB decision. The first two of these arguments fall under 9 U.S.C. § 10(a)(4) (exceeding arbitrator power), and the third is based in 9 U.S.C. § 10(a)(3) (refusing to hear pertinent evidence). For the reasons set forth below, I refuse to vacate the Award on these grounds.

### 1. Miller Did Not Manifestly Disregard Federal Law

Unlike an ordinary legal error—which is not grounds for vacatur—manifest disregard of the law occurs only when "it is evident from the record that the arbitrator knew the applicable law, and yet chose to ignore it." *Popkave v. John Hancock Distribs. LLC*, 768 F. Supp. 2d 785,

790 (E.D. Pa. 2011). "In determining an arbitrator's awareness of the law, [courts] impute only knowledge of governing law identified by the parties to the arbitration." *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 390 (2d Cir. 2003) (citation omitted). The party seeking to vacate the award therefore "bears the burden of proving that the arbitrators were fully aware of the existence of a clearly defined governing legal principle, but refused to apply it, in effect, ignoring it." *Id.* at 389 (citation omitted).

As a threshold issue, whether manifest disregard of federal law exists as a judicially created extension of 9 U.S.C. §10(a)(4) for vacatur of an arbitration award in the Third Circuit remains an open question. This ground for vacatur can be traced to *Wilko v. Swan*, 346 U.S. 427, 436-37 (1953), where the Supreme Court seemed to create an additional basis for vacatur when it contrasted erroneous interpretations of the law by arbitrators—not subject to judicial review—with "manifest disregard" of the law that would ostensibly trigger Section 10 of the FAA. Circuit courts, including the Third Circuit, initially acknowledged such a judicially created extension of § 10(a)(4). *Local 863 Int'l Bhd. of Teamsters, Chauffeurs, Warehouseman and Helpers of Am. v. Jersey Coast Egg Producers, Inc.*, 773 F.2d 530, 534 (3d Cir. 1985). Subsequent Supreme Court decisions in *Hall Street Assocs. LLC v. Mattel, Inc.*, 552 U.S. 576, 585 (2008) and *Stolt-Neilsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 672 n.3 (2010) made clear that *Wilko* did not create a general expansion of vacatur authority applicable to arbitration awards based on contract. However, the Court has not decided whether manifest disregard nonetheless survives as an independent ground for review.

Circuit courts have since split on this issue, with the Third Circuit not yet taking a position. *See e.g., Whitehead v. Pullman Grp., LLC*, 811 F.3d 116, 120 (3d Cir. 2016) (whether the manifest disregard of the law standard survived *Hall Street* "is an open question"). As I did

9

in a prior case, *Knabb P'ship v. Home Income Equity, LLC*, 2017 WL 1397247 (E.D. Pa. April 19, 2017), I will again assume without deciding that manifest disregard of the law remains a viable basis for vacatur. Applying the test formulated by the Third Circuit before the Supreme Court's decision in *Hall Street*, I find that Prospect has not carried its burden of proving that Miller willfully ignored controlling law.

Prospect contends that the Award demonstrated manifest disregard of the law because it purportedly ignored the law regarding the rights of a successor asset purchaser as well as a previous NLRB decision involving another hospital within CKHS. Under federal labor law, a successor asset purchaser has the right to set initial terms and conditions before commencing operations without any duty to first negotiate with an incumbent union, unless the purchaser can be considered a "perfectly clear" successor. *NLRB v. Burns Int'l Sec. Servs., Inc.*, 406 U.S. 272, 294-95 (1972). The perfectly clear exception is narrow, only applying where the successor employer *failed to notify*, or actively misled, employees about its intent to change terms and conditions of employment. *Spruce Up Corp.*, 209 NLRB 194, 195 (1974). As Prospect itself states, "the pertinent point is whether an employer notifies a union before a successor takes over operations of a change to working conditions." Pl.'s Mot. Vacatur 12-13.

Prospect assumes that Miller based her award on a finding that the parties did not come to an agreement about whether Prospect was going to eliminate banked vacation time in excess of the 200% accrual limit. Consequently, it reasons Miller ignored the law because there is no requirement for a successor asset purchaser to negotiate with an incumbent union prior to setting such a condition.

Although the record reflects that Miller *was* aware of the law creating rights for successor asset purchasers, Prospect's argument fails because Miller simply reached a different result on the facts before her than the result that Prospect sought:

> In part, Employer supports the elimination of bargaining unit employees' excess bank by relying on Prospect's exercise of its *right as a successor employer to set initial terms and conditions of employment.* There is no evidence that Prospect *notified* either the Union or bargaining unit employees at any time before Prospect and PASNAP negotiated the Recognition Agreement that Prospect was imposing the initial term or condition of their employment that employees would be forced to forfeit their excess vacation bank. Indeed, Employer has submitted no evidence showing that Prospect *notified* the Union or its members that Prospect was imposing any initial terms and conditions of employment at any time before the negotiation of the Recognition Agreement.

Pl.'s Ex. 1, 25 (emphasis added). The discussion above makes clear that Miller's decision did not turn on whether an *agreement* existed, as Prospect assumes, but rather on a determination that the parties' disagreement did not constitute *notice*. On the record before me, I cannot necessarily say that Miller erred—let alone that she displayed a manifest disregard for the law—in finding that Prospect violated its obligation when it failed to provide notice of the condition that employees' vacation banks would be reclaimed. Prospect therefore cannot sustain its burden of proving that Miller refused to apply the governing legal principle.

Similarly, Prospect challenges Miller's conclusion that Gaffney's testimony was inconclusive as to the provision of adequate notice. Prospect gives the game away, however, when it argues, "these erroneous *factual conclusions* led to a conclusion which displays a manifest disregard for the law." Pl.'s Mot. Vacatur 13 (emphasis added). Even if Miller made an error of fact, such error is not subject to judicial intervention.

Finally, Prospect argues that Miller manifestly disregarded the earlier NLRB ruling on a charge brought by another bargaining unit represented by PASNAP. But that argument is unpersuasive because, as discussed in more detail below, Miller squarely considered an offer of

11

proof by Prospect and made a reasoned determination to exclude testimony about the NLRB ruling on grounds of relevance.

## 2. The Award Is Derivative of the CBA

An arbitration award may be vacated under 9 U.S.C. § 10(a)(4) as exceeding the arbitrator's powers if the award strays from the interpretation and application of the collective bargaining agreement. *See Stolt-Nielsen*, 559 U.S. at 672. A party seeking such relief bears a heavy burden; "[i]t is not enough . . . to show that the arbitrator committed an error—or even a serious error. . . . [T]he sole question for us is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013) (internal citations and quotations omitted) (second alteration in original). An award must be enforced so long as "it draws its essence from the collective bargaining agreement." *Jersey Coast Egg Producers*, 773 F.2d at 534.

Prospect argues that the Arbitrator exceeded her powers because her award is based on an obligation to honor employees' excess vacation banks, even though the CBA contains no such obligation. This argument ignores how the issue was presented to Miller because the issue as framed—with Prospect's consent—*assumed* the nurses' prior right to accrue excess vacation: "[d]id Prospect, as successor to Crozer-Keystone, violate its obligations under the collective bargaining agreement to maintain vacation banks for employees who on the date of acquisition had greater than the contractual maximum accrual." Pl.'s Ex. 1, 2. The existence of such a right was not at issue. For that matter, the very language of Article 9, Section 1.c appears to acknowledge such a right by providing that the limitation of accrual was prospective only: "Effective July 1, 2015, no employees may accumulate . . . ." Pl.'s Ex. 2, 25.

12

A party to an arbitration cannot simply redefine the issue submitted to the arbitrator after the fact. Prospect's attempt to do so is particularly troublesome here because if the issue were redefined such that no obligation existed it would render the proceeding meaningless. This is so because, by Prospect's logic, any award in favor of the employees would necessarily be beyond the scope of the CBA. Consequently, Prospect could only stand to win, either by prevailing before the arbitrator in the first instance or later striking her award in the event it did not prevail.

Miller discussed both the language of the agreement and the parties' course of dealing and concluded that the agreement "limited the amount of vacations bargaining unit employees were permitted to accumulate on an annual basis," but "did not serve to eliminate these employees' entitlement to the vacation in their excess bank they already had accumulated." Pl.'s Ex. 1, 22. Based on her analysis, Miller determined that Prospect violated its obligation when it sought to change this existing term or condition without proper notice. This was a reasonable interpretation of the CBA within the scope of the issue as defined by the parties themselves and one that falls well within the bounds of deference afforded to an arbitrator.

### 3. The Arbitrator Did Not Refuse to Hear Material and Pertinent Evidence

Section 10(a)(3) allows a court to vacate an arbitration award if an arbitrator fails to hear material and pertinent evidence to the issue at arbitration. Error in the exclusion of evidence will only support vacatur if it is "in bad faith or so gross as to amount to affirmative misconduct." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 40 (1987). The ultimate question in considering vacatur on the basis of such a procedural error is whether the error deprived a party of a fair hearing. *See Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.*, 397 F.2d 594, 599 (3d Cir. 1968). Such deprivation has been found only in extreme circumstances, such as where an arbitrator determined procedural and substantive issues but only

13

allowed the opportunity to present evidence on the procedural issues. *Teamsters Local 312 v. Matlack, Inc.*, 118 F.3d 985, 996 (3d Cir. 1997).

Prospect argues that the Arbitrator's refusal to admit a witness' testimony about the outcome of a separate NLRB hearing constitutes a failure to hear material and pertinent evidence. In that regard it also argues that because her Award ostensibly conflicts with the NLRB ruling, it upsets national labor policy. The record reflects that Prospect was permitted to make arguments for the inclusion of this evidence, which Miller considered before excluding the testimony on grounds of relevancy. Miller made this ruling in consideration of the union's counter-argument that the NLRB ruling concerned events within a different timeframe at a different hospital within CKHS, under the auspices of a different bargaining unit represented by PASNAP. Even if Miller's evidentiary ruling was in error, Prospect makes no allegations of bad faith or gross misconduct. As a result, I have no authority under 9 U.S.C. § 10(a)(3) to vacate the Award.

### C. Related Case Motion for Judgment on the Pleadings

PASNAP filed a separate action (Civil Action No. 18-4039) requesting confirmation of the arbitration award and moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). A Rule 12(c) motion for judgment on the pleadings "is analyzed under the same standards that apply to a Rule 12(b)(6) motion." *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010) (citation omitted). The standard is well-established: I must view the pleadings in the light most favorable to the non-moving party, including drawing all inferences in favor of the pleader. *Leamer v. Fauver*, 288 F.3d 532, 535 (3d Cir. 2002). "A Rule 12(c) motion should not be granted unless the moving party has established that there is no material issue of fact to resolve,

14

and that it is entitled to judgment in its favor as a matter of law." *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 271 (3d Cir. 2014) (internal quotations and citations omitted).

As this matter seeks review of a labor arbitration award, there are no material issues of fact presented, but rather questions as to which party is entitled to a judgment as a matter of law. PASNAP makes the same arguments for its motion for judgment on the pleadings as it does against Prospect's motion for vacatur: that Prospect failed to timely file its motion under Section 301 of the LMRA and that, regardless, the Award does not suffer from any error that would make it subject to judicial intervention. In response, Prospect echoes its arguments above, relying on its ability to seek vacatur under the more generous statute of limitations of the FAA and its substantive arguments for vacatur of the Award to defeat PASNAP's motion.

As discussed above, there is no question that Miller's decision fell within the bounds of her authority and thus falls outside my authority to review the Award. As a result, PASNAP is entitled to judgment as a matter of law.

### III. CONCLUSION

This is not a case where one of the parties to the arbitration was coerced to participate by an opponent with greater bargaining power. Arbitration in this context is the traditional method by which employers and unions have agreed to resolve differences in the context of collective bargaining. The parties enter the process with the expectation that they will be bound by the arbitrator's decision, and the scope of judicial review is extraordinarily narrow. The Court of Appeals has described the standard as "singularly undemanding." *News Am. Publ'ns, Inc. v. Newark Typographical Union, Local No. 103*, 918 F.2d 21, 24 (3d Cir. 1990). Neither errors of fact nor errors of law will suffice and, where an arbitrator attaches greater significance to a particular set of facts than a party would prefer, there is no basis for setting aside the award. The

arbitrator here clearly applied a reasoned process of decision-making and gave consideration to the proper scope of evidence, the scope of the CBA, and the applicable principles of law. Her Award must therefore be sustained. Based on the foregoing, Plaintiff's Motion for Vacatur is denied and Defendant's Motion for Judgment on the Pleadings is granted. This Memorandum and the attached Order will be docketed in both actions.

/s/ Gerald Austin McHugh
Gerald Austin McHugh
United States District Judge